United States District Court
Southern District of Texas
**ENTERED**
August 28, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ALLEGIANCE BANK TEXAS, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:17-CV-00002 |
| § | |
| M/V LAKE LIMO, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Plaintiff, Allegiance Bank's ("Allegiance"), Motion for Summary Judgment Against Ashley Ryann Caldwell ("Caldwell"). Dkt. 178. After reviewing the motion, the response, and the applicable law, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### Factual background and Prior Proceedings

Allegiance entered in to various loan agreements[1] with MVR Star Fleet, L.L.C. ("Star Fleet"), which gave Allegiance preferred ship mortgages over the Motor Vessel ("M/V") Star Gazer, the M/V Star Cruiser, the M/V Lake Limo, and a security interest in an Office Barge and a set of Floating Docks (collectively, "the Collateral"). *See* Dkt. 1-1; Dkt. 1-2; Dkt. 179-1; 46 U.S.C. §§ 31301 et seq. Caldwell agreed to be jointly and severally liable as a guarantor for the loan agreements. Dkt. 178-2. Later, Star Fleet defaulted on its obligations under the agreements. Dkt. 1 at 4.

---

[1] Specifically, Allegiance and Star Fleet entered in to a Balloon Promissory Note, a Revolving Credit Agreement, and a Fleet Mortgage.

Allegiance filed this action against Star Fleet, its guarantors, and the Collateral *in rem*, for the outstanding balance on the loans. Dkt. 1. The Court entered an unopposed default judgment *in rem* against the Collateral for the outstanding balance on the loan and ordered the seizure of the Collateral. Pursuant to the Court's order, the Collateral was then sold to third-parties at auction for $167,000. *See* Dkt. 47; Dkt. 48; Dkt. 49; Dkt. 179 at 6-7. [2]

Caldwell filed a motion to have the Collateral sale set aside on the grounds that the sales prices were lower than the fair market value of the Collateral before seizure. Dkt. 51. Following an evidentiary hearing the Court denied the motion, specifically finding that there was "no evidence of fraud in connection with the judicial sale[s], collusion, or gross inadequacy of price." Dkt. 79; Dkt. 85. The Court also found as a matter of law that Caldwell was a guarantor on the loans entered into between Allegiance and Star Fleet. Dkt. 142. The Court's decision was affirmed by the Fifth Circuit Court of Appeals and the Clerk of the Court disbursed the proceeds from the auction in partial satisfaction of the loans. Dkt. 161; Dkt. 171.

Allegiance has now moved for summary judgment seeking a deficiency judgment against Caldwell for the outstanding balance on the loans, pre and post judgment interest on the loans, and attorney's fees. For the reasons below, the Court grants Allegiance's motion for summary judgment in part and denies it in part.

## Standard of Review

---

[2] At that time the outstanding balance on the loans was $421,214.06. Dkt. 44.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where the "'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Initially, the moving party bears the burden "of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (internal quotation marks omitted). If the moving party fulfills this responsibility, the non-moving party must then "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014) (internal quotation marks omitted). Conclusory statements, speculation, and unsubstantiated assertions will not suffice to meet the non-movant's summary judgment burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). However, all evidence will be reviewed in the light most favorable to the non-moving party and all reasonable inferences will be drawn in the non-moving party's favor. *Adickes v. S.H. Kress*, 398 U.S. 144, 157 (1970).

## Analysis

a. **Deficiency Judgment**

Under Federal law, United States district courts are empowered to enter judgments against the guarantors of a preferred ship mortgage "for any deficiency in the amount of the indebtedness secured by [a] vessel." *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir. 1972); 46 U.S.C. § 31325(b). A well-established process, a deficiency judgment is calculated by determining "the difference between the total outstanding obligation" on a mortgage and the "fair value" offset of any collateral sold in partial satisfaction of that loan. *Bollinger & Boyd Barge Serv., Inc. v. The Motor Vessel, Captain Claude Bass*, 576 F.2d 595, 598 (5th Cir. 1978) (quotations omitted). Ordinarily, "the amount realized on sale [at auction] is an automatic determination of the [fair value]" figure that is used for an offset calculation. *See Walter E. Heller & Co. v. O/S Sonny V*, 595 F.2d 968, 971 (5th Cir. 1979). However, this is a determination that is ultimately "left to the equitable discretion of the district court." *See id.*; *see J. Ray McDermott & Co., Inc.*, 457 F.2d at 819. Where a showing is made that there is a "probable significant disparity between the [auction] price of [any collateral sold] and its fair [market] value," a district court "must use the latter to determine the [deficiency]." *EnSerCo, L.L.C. v. Drilling Rig Noram 253*, 126 F. Supp. 2d 443, 446 (S.D. Tex. 2000) (*citing Walter E. Heller & Co.*, 595 F.2d at 971). The guiding principle being that no party should experience a "windfall" as a result of the foreclosure process. *Bollinger & Boyd Barge Serv., Inc.*, 576 F.2d at 598. In the event a district court finds that such a disparity exists, the question of the collateral's fair market value is a genuine issue of material fact better left for trial. *See EnSerCo, L.L.C.*, 126 F. Supp. 2d at 447.

Here, Ms. Caldwell argues that there is a significant disparity between the auction price of the Collateral and its fair market value and only the latter should be used to calculate whether any deficiency exists under this mortgage. Dkt. 179 at 10. Ms. Caldwell points out that while the Collateral sold at auction for a combined amount of $167,000, her husband, President of Star Fleet Mark Caldwell, stated by affidavit that the Collateral had a fair-market value of "$786,500 on the low end and $936,500.00 on the high end" before auction. *Id.* at 9. The Court is unconvinced by Ms. Caldwell's arguments and finds that there is no significant disparity between the auction price of the Collateral and its fair market value. Accordingly, no genuine issues of material fact exist as to the Collateral's fair value and the Court will use the auction price of the Collateral to calculate any deficiency under this mortgage.

Ms. Caldwell's arguments against using the auction price to calculate the deficiency judgment are a reformulation of identical arguments that she made two years ago. Specifically, in 2017 Ms. Caldwell motioned the Court to set the auction sales aside because they "were not commercially reasonable" and "were structured by Plaintiff to create an artificial deficiency." Dkt. 51 at 1. In support of this motion, Ms. Caldwell provided identical evidence of a disparity between the sales prices of the Collateral at auction and its fair market value at the time of sale. Dkt. 51 at 3-5. In response to Ms. Caldwell's concerns, the Court held two hearings to determine the legitimacy of the auction sales. Dkt. 58; Dkt. 78. At the hearing, evidence was admitted and testimony was taken concerning the validity of the auctions from Mark Caldwell and Bill Holbert, Senior Vice President of Allegiance. Dkt. 58. After due consideration of the live

testimony and the evidence in the record, the Court found that there was "no evidence of fraud in connection with the judicial sale[s], collusion, or gross inadequacy of price." Dkt. 79; Dkt. 85. Ms. Caldwell has not submitted any additional evidence that would require the Court to reconsider this finding.

Accordingly, the Court finds that there is no significant disparity between the sales price of the Collateral at auction and its fair market value, and that Allegiance is entitled to a deficiency judgment here in its favor. Pursuant to Fifth Circuit precedent, the deficiency judgment must be calculated by determining "the difference between the total outstanding obligation" on Star Fleet's mortgage and the "fair value" of the Collateral sold in partial satisfaction of that loan. *Bollinger & Boyd Barge Serv., Inc.*, 576 F.2d at 598. Following this formula, the Court finds that there is still a deficiency under the mortgage in the amount of $254,443.05.[3] Accordingly, the Court enters a deficiency judgment in the amount of $254,443.05 in Allegiance's favor against Ms. Caldwell.

### b. Interest

Allegiance also requests that any deficiency the Court enter in its favor include "interest on the unpaid mortgage and line of credit," which "continues to accrue at 18% interest per annum per the contractual rate." Dkt. 178 at 4; Dkt. 1-2 at 1 (for the interest rate on the revolving promissory note); Dkt. 1-1 at 1 (for the interest rate on the balloon promissory note). "[T]o the extent [the] Court is considering the imposition of interest on the principal amount of the debt," Ms. Caldwell's only objection is that "the accrual of

---

[3] On May 18, 2017, the Court entered a default judgment in favor of Allegiance for $421,214.06. Dkt. 44. Less Court expenses, the Clerk of the Court disbursed $111,771.01 to Allegiance for the sale of the M/V Star Gazer, the M/V Star Cruiser, the M/V Lake Limo. Dkt. 178 at 4. Allegiance also received $55,000 for the sale of the Office Barge and the Floating Docks. *Id*. This results in a deficiency of $254,443.05.

interest [] end on the date the [Collateral was] sold, which is May 19, 2017." *Id*. Dkt. 179 at 14. The Court declines to award any prejudgment or postjudgment interest on the mortgage at this time.

"[I]n diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law." *Bos. Old Colony Ins. Co v. Tiner Assocs.*, 288 F.3d 222, 234 (5th Cir. 2002). Therefore, in a Texas diversity case, two different rates are used to calculate the amount, if any, of any prejudgment or postjudgment interest owed to a party. *See Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456-57 (5th Cir. 2013) ("Postjudgment interest is not discretionary but 'shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield.'") (*citing* 28 U.S.C. § 1961(a)); *see also NCUA Bd. v. UBS Sec. LLC*, No. 13-cv-6731 (DLC), 2016 U.S. Dist. LEXIS 38877, at *17-18 (S.D.N.Y. Mar. 24, 2016) ("For a judgment granted 'on a contract,' prejudgment interest is calculated at 'the rate specified in the contract.'") (*citing* Tex. Fin. Code § 304.002).

Here, the parties have failed to calculate either the appropriate interest rate or the time period for which prejudgment and postjudgment interest should be awarded. Therefore, the Court declines to award any prejudgment or postjudgment interest pending the resolution of these genuine issues of material fact. The parties are not prejudiced from fully briefing this issue at a later time if they so choose.

c. **Attorney's Fees**

Finally, Allegiance asks the Court to award it attorney's fees against Ms. Caldwell in the amount of $24,010.34. Dkt. 178 at 7. Allegiance asserts that it is entitled to this amount in fees under the Guaranty agreement Ms. Caldwell entered in to with Allegiance:

> …[I]n case [this note] is placed in the hands of an attorney for collection or collected through proceedings the holder may add to the principal and interest then due thereon a sum equal to ten percent (10%) of that amount as attorney's or collection fees…

Dkt. 178-2 at 1. The Court agrees.

"For diversity cases, attorney's fees awards, which are 'entrusted to the sound discretion of the trial court'…are governed by state law." *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 230 (5th Cir. 2000) (citation omitted). And under Texas law, contractual provisions for attorney's fees are enforceable. *See Dall. Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). Therefore, absent a finding of unreasonableness, the Court will uphold a contractual right to attorney's fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (for factors to evaluate in determining whether a request for attorney's fees is reasonable).

Here, the Court finds that the guaranty agreement allows Allegiance the right to recover attorney's fees in the amount of 10% "then due" when the loan agreements were "placed in the hands of an attorney for collection." Dkt. 178 at 6. That amount is $45,353.00.[4] *Id*. Having previously awarded Allegiance attorney's fees in the amount of

---

[4] *See* Dkt. 178 at 6 ("At the time this suit was placed into undersigned counsel's care, the amount due and owing was $454,353.00.").

$21,342.66, the Court now finds that Allegiance is entitled to an additional $24,010.34 in attorney's fees. *See* Dkt. 44.

The Court finds that this attorney's fees award is reasonable in light of (1) the significant time and labor this case has taken, (2) the completeness of the judgment in Allegiance's favor, (3) the skill required to perform this maritime legal service, (4) the customary cost for similar legal services, (5) the amount of money involved in the case, and (6) the experience, reputation, and ability of Allegiance's lawyers. *See Arthur Andersen & Co.*, 945 S.W.2d at 818. Moreover, and perhaps more importantly, Ms. Caldwell does not contest the reasonableness of this attorney's fees request. *See Rutter v. Conseco Life Ins. Co.*, No. 3:09-cv-680-DPJ-JCS, 2011 WL 2532467, 2011 U.S. Dist. LEXIS 68341, at *14 (S.D. Miss. June 24, 2011) (failing to address an issue in a response to summary judgment is taken as conceding that issue); *see also Green Int'l v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (failing to object to an issue with a request for attorney's fees waives that objection). Accordingly, the Court grants Allegiance attorney's fees in the amount of $24,010.34.

## Conclusion

For the foregoing reasons the Court **GRANTS IN PART AND DENIES IN PART** Allegiance's Motion for Summary Judgment Against Ashley Ryan Caldwell. Dkt. 178. A deficiency judgment shall be granted in favor of Allegiance and against Ms. Caldwell in the amount of $254,443.05, and Ms. Caldwell is required to pay attorney's

fees to Allegiance in the amount of $24,010.34. The Court declines to award any prejudgment or postjudgment interest in favor of Allegiance at this time.

SIGNED at Galveston, Texas, this 27th day of August, 2019.

_____
George C. Hanks Jr.
United States District Judge